# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 2:09-cr-00164-JCM-GWF |
| vs. | ) **FINDINGS &**<br>) **RECOMMENDATIONS** |
| MARCO ANTONIO ARREOLA-LEON | ) |
| Defendant. | ) **Motion to Dismiss (#23)** |

This matter is before the Court on Defendant's Motion to Dismiss Based on Prior Unlawful Deportation (#23), filed on December 3, 2009 and the Government's Response to Motion to Dismiss Based on Prior Unlawful Deportation (#26), filed on December 11, 2009. The Court conducted a hearing in this matter on January 7, 2010.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Marco Antonio Arreola-Leon is charged with being a deported alien found unlawfully in the United States in violation of 8 U.S.C. §1326. The Indictment alleges that Defendant was found in the United States on or about April 1, 2009 after having been previously deported and removed from the United States on or about July 3, 1999, September 8, 2003, December 20, 2004 and January 10, 2008. For purposes of this order, the factual allegations on which the removal orders were based are assumed to be true.

Mr. Arreola-Leon was born in 1966 and is a citizen of Mexico. He reportedly resided in the United States from the age of 13 until his first deportation or removal in 1998. Defendant has never been granted legal permission to reside or work in the United States. *Government's Response (#26), Attachment "A"* (hereinafter *Attachment "A"*), pp. 1, 4, 7. On November 26,

1   1997, Defendant pled guilty in the Municipal Court, Los Angeles County, California to charges of

2   fraud, receiving stolen property, false personation of another, and being under the influence of

3   alcohol.  Defendant was committed to the custody of the sheriff to be detained until legally

4   discharged.  *Attachment "A"*, p. 1.  He allegedly escaped from custody on or about January 24,

5   1998 while awaiting sentencing on the foregoing charges.  *Attachment "A"*, p. 14.   Defendant

6   thereafter left the United States and entered Mexico.

7            On May 26, 1998 Defendant Arreola-Leon attempted to enter the United States at the San

8   Luis, Arizona port of entry, using a California birth certificate and an Oregon driver's license in

9   the name of Jorge Antonio Moreno-Garcia.  *Attachment "A"*, p. 2.  In a sworn statement given to

10  the immigration inspector on that date, Defendant stated that he purchased the birth certificate "on

11  the street in Los Angeles" for $30.  He acknowledged that he knew it was against the law to seek

12  admission in the United States by [falsely] claiming to be a United States citizen and to use

13  fraudulent documents to enter the United States.  *Attachment "A"*, p. 6.  Defendant Arreola-Leon

14  also acknowledged that he had "walked away and fled" from the Los Angeles County Sheriff's

15  Office in November 1997 and that there was a warrant out for his arrest.  *Attachment "A"*, p. 7.

16  Defendant stated that he originally came to the United States to live with his aunt and attend

17  school.  He stated that he did not have any fear or concern about being returned to his home

18  country or being removed from the United States.  He also stated that he would not be harmed if

19  he was returned to his home country.  *Attachment "A"*, p. 10.

20           On May 26, 1998, the Immigration and Naturalization Service ("INS") served Defendant

21  Arreola-Leon with a Notice and Order of Expedited Removal.  *Motion to Dismiss (#23)*, *Exhibit*

22  *"A"*.  The Notice and Order stated that pursuant to 8 U.S.C. § 1225(b)(1), the INS had determined

23  that Defendant was inadmissible to the United States because he had falsely represented himself to

24  be a citizen of the United States and had attempted to gain admission by presenting an altered birth

25  certificate.  Pursuant to the Notice and Order, Defendant was ordered to be removed from the

26  United States.  *Id.*  Instead of being physically removed from the United States, however,

27  Defendant was paroled into the United States and sent to the Yuma County Detention Facility

28  pending extradition to California on the warrant for his arrest.  *Attachment "A"*, p. 2.

2

1    On July 21, 1998 Defendant Arreola-Leon was sentenced in the Superior Court of

2    California on the charges to which he had previously pled guilty in November 1997.  He was

3    sentenced to one year and four months imprisonment on the fraud, receiving stolen property and

4    false personation charges and to six months on the DUI charge.  *Attachment "A"*, p. 13.  An

5    Information was also filed against Defendant in the Superior Court on July 9, 1998, charging him

6    with felony escape.  *Attachment "A"*, p. 14.  Defendant subsequently pled guilty to this charge and

7    was sentenced to one year and four months imprisonment on August 3, 1998.  *Attachment "A"*, p.

8    16.  Following his release from imprisonment, Defendant was removed from the United States on

9    July 3, 1999 pursuant to the May 26, 1998 expedited removal order.  *Attachment "A"*, p. 17.

10   Defendant Arreola-Leon re-entered the United States in October 2000 at or near San

11   Ysidro, California.  On September 8, 2003, the INS served Defendant with a Notice of

12   Intent/Decision to Reinstate Prior Order which reinstated the May 26, 1998 expedited removal

13   order.  *Motion to Dismiss (#23)*, *Exhibit "B"*.  Pursuant to the reinstated order, Defendant was

14   again removed from the United States on September 8, 2003.  *Attachment "A"*, pp. 18-19.

15   On or about November 12, 2003, a felony complaint was filed against Defendant Arreola-

16   Leon in the Superior Court of California, Los Angeles County, charging him with corporeal injury

17   to his spouse, cohabitant, or child's parent in violation of California Penal Code §273.5(a) and

18   with Deceptive Document Crime in violation of California Penal Code §483.5(a).  These crimes

19   allegedly occurred on November 9, 2003.  *Attachment "A"*, pp. 20-23.  Defendant pled guilty to

20   the charge of corporeal injury on spouse and was sentenced to two years imprisonment on

21   November 19, 2003.  *Attachment "A"*, p. 24.  Prior to the aforementioned charges, Defendant was

22   also charged in a felony complaint filed on August 14, 2001 in the Superior Court of California,

23   San Bernardino County, California with second degree robbery in violation of California Penal

24   Code §211 and assault with a deadly weapon in violation of California Penal Code §245(a)(1).

25   These crimes were allegedly committed on June 10, 2001.  *Attachment "A"*, pp. 25-27.  Defendant

26   subsequently pled guilty to the assault with a deadly weapon charge and was sentenced to two

27   years imprisonment on April 7, 2004.  *Attachment "A"*, p. 28.

28   . . .

On November 24, 2004, the INS issued a Notice to Appear to the Defendant, which was served on him on November 30, 2004. *Motion to Dismiss (#23)*, *Exhibit "C".* The Notice to Appear alleged that Defendant Arreola-Leon illegally entered the United States on or about November 1, 2003 at San Ysidro, California. It further alleged that Defendant was convicted on April 7, 2004 in the Superior Court, San Bernardino County, California for the offense of assault with a deadly weapon in violation of California Penal Code §245(a)(1) for which he was sentenced to incarceration for two years. The Notice to Appear charged that Defendant was subject to removal on these charges pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act. *Id.* Defendant executed that part of the notice form requesting an immediate hearing and waiving his right to a 10-day waiting period prior to appearing before an immigration judge. *Id.*

Defendant's removal hearing was conducted before an immigration judge on December 20, 2004. *Motion to Dismiss (#23)*, *Exhibit "D", Order of the Immigration Judge* and *INS Attorney Worksheet*. Defendant's counsel has represented that the INS's successor, Department of Homeland Security/Immigration and Custom Enforcement ("ICE"), was unable to produce an electronic recording or transcript of the removal hearing. The Order of the Immigration Judge states that Defendant was ordered removed from the United States to Mexico. It also states that Defendant's application for voluntary departure was denied. *Id.*, *Exhibit "D", Order of the Immigration Judge.* The *INS Attorney Worksheet* also indicates that Defendant was flagged as an aggravated felon. *Id., Exhibit "D"*, pp. 408-409. Pursuant to the Immigration Judge's order, Defendant was removed from United States on December 20, 2004. *Attachment "A"*, p. 30.

On February 23, 2006 a felony complaint was filed against Defendant in the Superior Court, San Bernardino County, California charging him with felony driving under the influence of alcohol and driving with a blood alcohol content in excess of 0.08 percent. These crimes allegedly occurred on December 8, 2005. *Attachment "A"*, p. 31-33. Defendant subsequently pled guilty to felony driving under the influence and was sentenced to three years imprisonment on March 27, 2006. *Attachment "A"*, p. 34.

On January 10, 2008, the Department of Homeland Security/ICE issued and served a Notice of Intent/Decision to Reinstate Prior Order on Defendant. *Motion to Dismiss (#23)*, *Exhibit*

*"E"*.  The notice advised Defendant that he was an alien subject to a prior order of removal entered on December 20, 2004 and that he had illegally reentered the United States at or near Tecate, California on or about November 20, 2005.  Pursuant to the reinstated December 20, 2004 removal order, the Department of Homeland Security ordered that Defendant again be removed from the United States.  *Id.*  Defendant Arreola-Leon was removed that same day.  *Attachment "A"*, pp. 36-37.

Defendant Arreola-Leon was thereafter arrested by the Las Vegas Metropolitan Police on March 21, 2009 for alleged possession of a stolen vehicle.  *Attachment "A"*, p. 38.  On April 1, 2009, Defendant signed a Record of Sworn Statement in Affidavit Form presented to him by an ICE officer.  *Attachment "A"*, p. 39.  In that affidavit, Defendant stated that he had reentered the United States on or about January 2009.  *Id.*  Defendant was thereafter indicted in this case on April 22, 2009.

## DISCUSSION

**1.      Collateral Review of Underlying Removal Orders in a Prosecution Under 8 U.S.C. §1326.**

Defendant Arreola-Leon moves for dismissal of the indictment on the grounds that the underlying removal orders on which the indictment is based were unlawfully obtained in violation of his rights to equal protection and due process of law as guaranteed by the Fifth Amendment of the United States Constitution.

The legal basis for collaterally attacking an underlying removal order in a prosecution under 8 U.S.C. §1326 is set forth in *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047-48 (9th Cir. 2004) as follows:

> "In a criminal prosecution under §1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998), *cert. denied*, 525 U.S. 849, 119 S.Ct. 123, 142 L.Ed.2d 99 (1998).  A defendant charged with illegal reentry under 8 U.S.C. §1326 has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction.  *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) ....  To sustain a collateral attack under §1326(d), a defendant must, within constitutional limitations,

demonstrate (1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceeding at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) that the entry of the order was fundamentally unfair.  8 U.S.C. §1326(d).  An underlying removal order is "fundamentally unfair" if: (1) [a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Zarate-Martinez*, 133 F.3d at 1197.

An alien is barred from collaterally attacking his underlying removal order if he validly waived the right to appeal that order during the deportation proceeding.  *Ubaldo-Figueroa*, 364 F.3d at 1048, citing *United States v. Muro-Inclan*, 249 F.3d 1180, 1182 (9th Cir. 2001), *cert. denied*, 534 U.S. 879, 122 S.Ct. 180, 151 L.Ed.2d 125 (2001).  Collateral review of the deportation proceeding is not barred, however, if the alien's waiver of his right to appeal did not comport with due process.  A waiver of the right to appeal does not comport with due process when it is not "considered and intelligent."  *Ubaldo-Figueroa* states in this regard:

We do not consider an alien's waiver of his right to appeal his deportation order to be "'considered and intelligent' when 'the record contains an inference that the petitioner is eligible for relief from deportation,' but the Immigration Judge fails to 'advise the alien of this possibility and give him the opportunity to develop the issue.'"  *Muro-Inclan*, 249 F.3d at 1182 (quoting *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000)).  The requirement that the IJ inform an alien of his or her ability to apply for relief from removal is "mandatory," and "[f]ailure to so inform the alien [of his or her eligibility for relief from removal] is a denial of due process that invalidates the underlying deportation proceeding."  *Id.* at 1183.

*Ubaldo-Figueroa*, 364 F.3d at 1049.

In *United States v. Ortiz-Lopez*, 385 F.3d 1202,1204 (9th Cir. 2004), the court held that the defendant's due process rights were violated because the Immigration Judge failed to inform him that he was eligible for a fast track voluntary departure in lieu of removal under 8 U.S.C. § 1229c(a).  The court again noted that the requirement to inform an alien of his or her eligibility to apply for relief from removal is mandatory.

If the court determines that the defendant's due process rights were violated, then it must also determine whether he or she was prejudiced by the violation.  To establish prejudice, the defendant does not have to show that he would actually have been granted relief, but only that he had a "plausible" ground for relief from deportation.  *Ubaldo-Figueroa*, 364 F.3d at 1050.  In

6

1  *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1056, the court stated that "[i]n order to

2  demonstrate prejudice, [defendant] would also have to show that he is not barred from receiving

3  relief.  If he is barred from receiving relief, his claim is not plausible."

> **2.     Defendant's Challenge to the July 3, 1999 and September 8,**
> **2003 Removal Orders.**

6         Defendant's initial May 26, 1998 removal order was entered pursuant to 8 U.S.C.

7  §1225(b)(1) which provides that if an immigration officer determines that an alien who is arriving

8  in the United States is inadmissible under 8 U.S.C. §1182(a)(6)(C) or 1182(a)(7), the officer shall

9  order the alien removed from the United States without further hearing or review unless the alien

10  indicates either an intention to apply for asylum under 8 U.S.C. §1158 or a fear or persecution.

11  Section 1182(a)(6)(C) states that an alien who attempts to enter the United States through fraud or

12  willful misrepresentation of a material fact is inadmissible.  Section  1182(a)(7) states that an alien

13  who attempts to enter the United States without valid travel documents or valid documents of

14  identity and nationality is inadmissible.  In this case, Defendant Arreola-Leon attempted to enter

15  the United States by representing himself as a United States citizen and presenting a false birth

16  certificate and driver's license.  Defendant acknowledged to the immigration officers that he knew

17  this conduct was against the law.  He did not indicate an intention to apply for asylum or state that

18  he had a fear of persecution in his home country.  Defendant was therefore subject to removal

19  under 8 U.S.C. §1225(b)(1).

20         Defendant nevertheless argues that the May 26, 1998 removal order is invalid because

21  §1225(b)(1) violates his and other similarly situated aliens' rights to the equal protection of the

22  laws.  Defendant argues that immigration officers may arbitrarily remove some aliens without a

23  hearing under §1225(b)(1), while placing other similarly situated aliens in removal proceedings

24  under 8 U.S.C. §1229a in which they have the right to a removal hearing before an immigration

25  judge, to be represented by counsel and to appeal any adverse determination.  An alien in removal

26  proceedings under §1229a also has the opportunity to apply for voluntary departure under 8 U.S.C.

27  §1229c in lieu of removal.  An alien who is permitted to voluntarily depart the United States is not

28  subject to prosecution under §1326 if he or she subsequently reenters the United States illegally.

1    Defendant also argues that aliens removed under §1225(b)(1) are arbitrarily denied the opportunity

2    to withdraw their application for admission prior to actual entry into the United States.  Defendant

3    asserts that there is no rational basis for such differences in treatment of similarly situated aliens

4    and that 8 U.S.C. §1225(b)(1) should therefore be declared unconstitutional.

5         The right to equal protection under the laws of the United States is founded in the Due

6    Process Clause of the Fifth Amendment.  *United States v. Calderon-Segura*, 512 F.3d 1104, 1107

7    (9th Cir. 2008), citing *Garberding v. INS*, 30 F.3d 1187, 1190 (9th Cir. 1994).  *See also Lansdale v.*

8    *Hi-Health Supermarket Corp.*, 314 F.3d 355 n. 2 (9th Cir. 2002), citing *Vance v. Bradley*, 440 U.S.

9    93, 94 n. 1 (1979).  Aliens who have gained entry into the United States, even if unlawfully, are

10   entitled to procedural due process under the Fifth Amendment.  In *Zadvydas v. Davis*, 533 U.S.

11   678, 121 S.Ct. 2491 (2001), for example, the Supreme Court held that the indefinite detention of a

12   resident alien who had been ordered removed from the United States, but who was unable to return

13   to his native country or any other nation, violated due process of law.  In so holding, the Court

14   distinguished *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed.

15   956 (1953), which held that the indefinite detention of an alien who was denied admission at the

16   port-of-entry did not violate due process.  As *Zadvydas* explained:

17            The distinction between an alien who has effected an entry into the
              United States and one who has never entered runs throughout
18            immigration law. See *Kaplan v. Tod,* 267 U.S. 228, 230, 45 S.Ct.
              257, 69 L.Ed. 585 (1925) (despite nine years' presence in the United
19            States, an "excluded" alien "was still in theory of law at the
              boundary line and had gained no foothold in the United States");
20            *Leng May Ma v. Barber,* 357 U.S. 185, 188-190, 78 S.Ct. 1072, 2
              L.Ed.2d 1246 (1958) (alien "paroled" into the United States pending
21            admissibility had not effected an "entry"). It is well established that
              certain constitutional protections available to persons inside the
22            United States are unavailable to aliens outside of our geographic
              borders. See *United States v. Verdugo-Urquidez,* 494 U.S. 259, 269,
23            110 S.Ct. 1056, 108 L.Ed.2d 222 (1990) (Fifth Amendment's
              protections do not extend to aliens outside the territorial
24            boundaries); *Johnson v. Eisentrager,* 339 U.S. 763, 784, 70 S.Ct.
              936, 94 L.Ed. 1255 (1950) (same). But once an alien enters the
25            country, the legal circumstance changes, for the Due Process Clause
              applies to all "persons" within the United States, including aliens,
26            whether their presence here is lawful, unlawful, temporary, or
              permanent. See *Plyler v. Doe,* 457 U.S. 202, 210, 102 S.Ct. 2382, 72
27            L.Ed.2d 786 (1982); *Mathews v. Diaz,* 426 U.S. 67, 77, 96 S.Ct.
              1883, 48 L.Ed.2d 478 (1976); *Kwong Hai Chew v. Colding,* 344
28            U.S. 590, 596-598, and n. 5, 73 S.Ct. 472, 97 L.Ed. 576 (1953); *Yick*

1
2
3
4
5
6

*Wo v. Hopkins*, 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); cf. *Mezei, supra,* at 212, 73 S.Ct. 625 ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law"). Indeed, this Court has held that the Due Process Clause protects an alien subject to a final order of deportation, see *Wong Wing v. United States,* 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (1896), though the nature of that protection may vary depending upon status and circumstance, see *Landon v. Plasencia,* 459 U.S. 21, 32-34, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982); *Johnson, supra,* at 770, 70 S.Ct. 936.

7   *Zadvydas v. Davis*, 533 U.S. at 693-94, 121 S.Ct. at 2500-01.

8   In *Leng Ma v. Barber*, 357 U.S. 185, 78 S.Ct. 1072 (1958), the Court held that the granting
9   of temporary parole to a non-admitted alien pursuant to 8 U.S.C. 1182(d)(5) did not change the
10  alien's legal status regarding non-entry into the United States. In *Barrera-Echavarria v. Rison*, 44
11  F.3d 1441 (9th Cir. 1995), the court also held that an alien who was denied admission at the port of
12  entry, but was granted a period of temporary parole, did not have the right to challenge his
13  detention by the immigration authorities under the Fifth Amendment.[1]

14  In *United States v. Lopez-Vasquez*, 227 F.3d 476 (5th Cir. 2000), the Fifth Circuit rejected
15  substantially the same equal protection/due process argument that Defendant makes in this case.
16  The defendant in that case attempted to cross the border at the port of entry in El Paso, Texas by
17  declaring himself to be a United States citizen. He was referred to a secondary inspection area
18  where he admitted to INS inspectors that he was a Mexican citizen. The INS inspectors
19  determined that defendant was ineligible for admission into the United States and, pursuant to 8
20  U.S.C. §1225(b)(1)(A)(i), placed him in expedited removal proceedings and ordered him removed.
21  Before his departure from the secondary inspection area, the inspectors provided defendant with a
22  form stating that (1) he was ineligible for admission to the United States because he made a false
23  claim of United States citizenship, (2) he was prohibited from entering or attempting to enter the

24
25
26
27
28

[1]In *Lin Guo Xi*, 298 F.3d 832 (9th Cir. 2002), however, the court held that the 1996 amendment to 8 U.S.C. 1231(a)(1), which governs the detention of aliens, no longer distinguishes between resident aliens and aliens who have not entered the country. Accordingly, as a matter of statutory construction, aliens who have been denied entry may now only be detained for a reasonable time under 8 U.S.C. §1231.

9

1   United States for a period of five years without first obtaining permission from the Attorney

2   General to reapply for admission, and (3) 8 U.S.C. §1326 makes it a crime for him to reenter,

3   attempt to reenter or be found in the United States without such consent. *Id.*, 227 F.3d at 478-79.[2]

4   The defendant was subsequently found in the United States and indicted for violation of  8 U.S.C.

5   §1326.

6          The defendant argued that the indictment should be dismissed because the procedures used

7   to remove him violated due process and were not subject to judicial review.  He argued that if he

8   had been afforded due process, he would have been informed that he could apply for voluntary

9   departure under 8 U.S.C. §1229c or withdrawal of his application for admission under 8 U.S.C.

10  §1225(a)(4).  In rejecting defendant's constitutional due process argument, the Fifth Circuit relied

11  on the cases holding that an alien who has not entered the United States is only entitled to the

12  process provided by Congress.  *Lopez-Vasquez*, 227 F.3d at 484-85.  The defendant did not

13  contend that the procedures for expedited removal under 8 U.S.C. §§1225(b)(1)(A)(i) were not

14  followed.  The court therefore held that he was not denied the procedural due process to which he

15  was entitled by statute and regulation.

16         *Lopez-Vasquez* also held that even if defendant was entitled to challenge the expedited

17  removal order on the grounds that he was deprived of the opportunity to apply for voluntary

18  departure or to withdraw his request for admission, he did not suffer prejudice.  The Fifth Circuit

19  agreed with the district court that defendant would not have been allowed to voluntarily depart

20  because he had previously been granted voluntary departure and 8 U.S.C. §1229c(c) prohibits the

21  granting of a second voluntary departure.  The court also stated that the decision to permit an alien

22  to withdraw his request for admission is purely discretionary and defendant would not have been

23  granted such permission under applicable INS policies because of his prior state criminal

24  conviction for unauthorized use of a vehicle.  *Id.*, 227 F.3d at 480, 485.

25         The Government argues that even if Defendant Arreola-Leon could challenge 8 U.S.C.

26  §1225(b)(1) on equal protection grounds, the statute must be upheld under the rational basis test.

27  _____

28         [2]Mr. Arreola-Leon was provided with a similar form.  *See Attachment "A"*, p. 17.

1    In *United States v. Calderon-Segura*, 512 F.3d 1104, 1107 (9th Cir. 2008), the defendant argued

2    that 8 U.S.C. §1228(b) (which permits the expedited removal of certain aliens convicted of

3    aggravated felonies) violated equal protection because the Attorney General had the unfettered

4    discretion to place other similarly situated aliens in removal proceedings under 8 U.S.C. §1229a.

5    In rejecting the defendant's argument, the Ninth Circuit agreed with the Fifth and Eighth Circuits

6    that a rational basis exists for granting the Attorney General such discretion.  The court noted that

7    aliens described in §1228(b) include many persons who could rationally be granted special

8    deference and courtesy under the immigration laws:  ambassadors, diplomats, employees of

9    foreign governments, journalists, scholars, teachers and professors among others.  The court noted

10   that although it might have been wiser and more fair for Congress to have deemed all non-lawful

11   permanent resident aggravated felons ineligible for the benefits available in general removal

12   proceedings, the expedited removal statute was a rational first step toward the legitimate goal of

13   rapidly removing criminal aliens.

14       The Government appears to argue in this case that Congress has a rational basis to

15   distinguish between inadmissible aliens who have entered the United States and those who have

16   not entered the country.  *Government's Response (#26)*, p. 9.  Defendant argues, however, that

17   §1225(b)(1) violates equal protection because it arbitrarily permits the immigration authorities to

18   order the removal of aliens who have not entered the United States without affording them a

19   hearing or permitting them to request relief from removal, while placing other aliens who also

20   have not entered the United States, into removal proceedings pursuant to §1229a(a) or permitting

21   them to withdraw their applications for admission.  Consistent with *Calderon-Segura*, there

22   appears to be a rational basis for granting the Department of Homeland Security the discretion to

23   place aliens, who are otherwise subject to expedited removal under §1225(b)(1), into formal

24   removal proceedings under 8 U.S.C. §1229a.  This could include circumstances where there is

25   reasonable doubt that the alien has willfully misrepresented his citizenship status or has provided

26   false travel or identity documents.  It could also include circumstances in which an alien appears to

27   have plausible grounds for relief from removal.  While there arguably should be specific standards

28   for granting some inadmissible aliens greater procedural rights in removal proceedings, the Court

11

1   cannot conclude on the record before it that §1225(b)(1) on its face violates aliens' rights to equal

2   protection.  In any event, because Defendant Arreola-Leon did not gain entry to the United States,

3   he cannot challenge the statute on this basis.

4          The Government also argues that Defendant was not prejudiced by being denied the

5   opportunity to request the withdrawal of his application for admission prior to the issuance of the

6   May 26, 1998 removal order.  This issue was recently addressed by the district court in *United*

7   *States v. Martinez-Zavala*, 2009 WL 2485751 *8 (S.D.Cal. 2009), as follows:

8               Section 1225(a)(4) provides that "[a]n alien applying for admission
              may, in the discretion of the Attorney General and at any time, be
9               permitted to withdraw the application for admission and depart
              immediately from the United States." In *Matter of Gutierrez,*
10              however, the Board of Immigration Appeals ("BIA") held that an IJ
              should not permit an alien to withdraw his application for admission
11              unless the alien, "in addition to demonstrating that he possesses both
              the intent and the means to depart immediately from the United
12              States, establishes that factors *directly relating to the issue of
              admissibility* indicate that granting withdrawal would be in the
13              interest of justice (*i.e.* that justice would be ill served if an order of
              exclusion was entered)." 19 I. & N. Dec. 562, 564-565 (BIA 1988)
14              (emphasis added). INS regulations implementing 8 U.S.C.
              1225(a)(4) essentially codify the *Matter of Gutierrez* standard. *See* 8
15              C.F.R. § 1240.1(d) ("[a]n immigration judge shall not allow an alien
              to withdraw an application for admission unless the alien, in
16              addition to demonstrating that he or she possesses both the intent
              and the means to depart immediately from the United States,
17              establishes that factors directly relating to the issue of
              inadmissibility indicate that the granting of the withdrawal would be
18              in the interest of justice"). *Matter of Gutierrez* also specifically
              found that a "balancing of the equities test is not an appropriate
19              method by which to determine whether an alien merits permission to
              withdraw an application for admission ... a narrower focus [is]
20              intended." 19 I. & N. Dec. at 564. Thus, in order to demonstrate
              prejudice, the defendant must show that it was reasonably possible
21              that factors directly relevant to admissibility indicated that allowing
              him to withdraw his application would be in the interest of justice.

22

23          In holding that the defendant was not prejudiced by not being afforded the opportunity to

24   request withdrawal of his application for admission, *Martinez-Zavala* noted that the only factor

25   defendant identified in support of his admissibility was his relationship to his children and family

26   members who were United States citizens.  The court stated, however, that family ties, standing

27   alone, generally do not warrant withdrawal of an application for admission.

28   . . .

12

1    In this case, Defendant Arreola-Leon has not pointed to any factors, other than possible

2    family ties in the United States, that would have supported a withdrawal of his application for

3    admission.  The Government also argues that Defendant would not have been permitted to

4    withdraw his application for admission because the INS officers were aware that there was an

5    outstanding warrant for Defendant's arrest in California, and Defendant admitted that he had fled

6    from custody and that there was a warrant for his arrest.  The Court agrees that it is not plausible

7    that Defendant would have been permitted to withdraw his application for admission based on a

8    finding that it was in the interests of justice to allow him to do so.

9    It does not appear that Defendant Arreola-Leon was statutorily ineligible to apply for

10   voluntary departure at the time of his expedited removal on May 26, 1998.  It was, however, also

11   arguably implausible that Defendant would have been permitted to voluntarily depart from the

12   United States given the outstanding California warrant for Defendant's arrest for escape and his

13   admission that he had fled and was aware of the warrant.  In *United States v. Gonzalez-Valero*, 342

14   F.3d 1051, 1056-57 (9th Cir. 2003), the court stated that an alien who has a serious criminal history

15   must demonstrate unusual or outstanding equities in his favor to be granted voluntary departure.

16   Family ties in the United States are generally insufficient to make such a showing.

17   While it is doubtful that Defendant had a plausible basis upon which to obtain voluntary

18   departure in May 1998, the Court concludes that Defendant's attack on the May 26, 2008 removal

19   order should be denied because he is not legally entitled to challenge the validity of §1225(b) on

20   equal protection/due process grounds.  The Court also concludes that §1225(b) does not violate

21   defendant's and other similarly situated aliens' rights to equal protection of the laws under the Due

22   Process Clause.  Because Defendant's collateral attack on the September 8, 2003 reinstatement

23   order is predicated on the invalidity of the May 26, 1998 removal order, his collateral attack on

24   that order also fails.

25        **3.    Defendant's Challenge to the December 20, 2004 and January
               10, 2008 Removal Orders.**

26

27   Defendant Arreola-Leon was ordered removed from the United States on December 20,

28   2004 following a hearing before an immigration judge.  Defendant does not challenge the grounds

13

1   upon which it was determined that he was removable.  *Motion (#23)*, p. 7.  He argues, however,

2   that he was not permitted to apply for relief from removal for which he was eligible-- fast-track

3   voluntary departure under 8 U.S.C. §1229c(a).  Defendant therefore argues that the removal

4   hearing did not comport with due process and that he suffered prejudice.  The Government

5   primarily argues that Defendant, as an aggravated felon, was not eligible for voluntary departure

6   and therefore cannot establish prejudice.

7       8 U.S.C. §1229c(a)(1) provides that an alien may be permitted to voluntarily to depart the

8   United States at the alien's own expense in lieu of deportation if the alien is not deportable under

9   section 1227(a)(2)(A)(iii) (conviction of an aggravated felony) or under section 1227(a)(4)(B)

10  (terrorist activities).  Thus, an alien who has been convicted of an aggravated felony, as defined in

11  immigration law, is ineligible for voluntary departure and cannot demonstrate prejudice because he

12  was not informed of the availability of that form of relief.  *See United States v. Gonzalez-Valerio*,

13  342 F.3d at 1056.

14       A "crime of violence," as defined in 18 U.S.C. §16, is an aggravated felony under the

15  immigration laws.  *See* 8 U.S.C. § 1101(a)(43)(F).  18 U.S.C. §16 defines a  "crime of violence" as

16  (a) an offense that has as an element the use, attempted use, or threatened use of physical force

17  against the person or property of another, or (b) any other offense that is a felony and that, by its

18  nature, involves a substantial risk that physical force against the person or property of another may

19  be used in the course of committing the offense.

20       In determining whether a state criminal conviction constitutes an aggravated felony under 8

21  U.S.C. § 1101(a)(43), the court is required to apply the categorical approach adopted by the

22  Supreme Court in *Taylor v. United States*, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607

23  (1990).  The categorical approach generally requires the court to look at the state statutory

24  definition of the crime rather than the underlying factual circumstances to determine whether it is

25  an aggravated felony under federal law.  *United States v. Castillo-Rivera*, 244 F.3d 1020, 1022

26  (9th Cir. 2001).  Under this approach, the issue is not whether the actual conduct constituted an

27  aggravated felony, but whether the full range of conduct encompassed by the state statute

28  constitutes an aggravated felony.  *Id.,* citing *United States v. Sandoval-Barajas*, 206 F.3d 853, 855-

56 (9th Cir. 2000).  *See also United States v. Castillo-Rivera*, 244 F.3d 1020, 1022 (9th Cir. 2001).

The Ninth Circuit has already held that a conviction for assault with a deadly weapon under California Penal Code §245(a)(1) is a crime of violence under 18 U.S.C. § 16 and therefore an aggravated felony under 8 U.S.C. § 1101(a)(43)(F).  In *Ortiz-Magana v. Mukasey*, 542 F.3d 653 (9th Cir. 2008), the court held that a conviction for aiding and abetting an assault with a deadly weapon under Penal Code §245(a)(1) is an aggravated felony.  In so holding, the court stated at the outset of its opinion that "[a]ssault with a deadly weapon under California Penal Code §245(a)(1) is a crime of violence as defined by 18 U.S.C. § 16; therefore, an alien convicted of that offense is generally an aggravated felon for immigration purposes."  *Id.*, at 654.  In *United States v. Heron-Salinas*, 566 F.3d 898 (9th Cir. 2009), the court also held that a conviction for assault with a firearm under Penal Code §245(a)(2) is a crime of violence and an aggravated felony under 8 U.S.C. § 1101(a)(43)(F).  In so holding, that court relied on its analysis in *Ortiz-Magana*.  Finally, in *United States v. Grajeda*, 581 F.3d 1186 (9th Cir. 2009), the court has held that a conviction for assault with a deadly weapon under California Penal Code §245(a)(1) is a crime of violence under the United States Sentencing Guidelines ("U.S.S.G.") §2L1.2(b)(1)(A)(ii), which defines a "crime of violence" as "any offence under federal law, state or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."  *Id.*, 581 F.3d at 1190 n.2.  As the court noted, this is substantially identical to the definition of "crime of violence" set forth in 18 U.S.C. §16(a).  It is therefore clear that Defendant Arreola-Leon's conviction for assault with a deadly weapon under California Penal Code §245(a)(1) is an aggravated felony under 8 U.S.C. § 1101(a)(43)(F).  Because Defendant was not statutorily eligible for voluntary departure under 8 U.S.C. §1229c(a)(1), he was not prejudiced by the immigration judge's alleged failure to inform him of this form of relief from removal.  Because Defendant's challenge to the January 10, 2008 reinstatement order is predicated on the invalidity of the December 20, 2004 removal order, his collateral attack on that removal order also fails.[3]

---

[2]The Government has also argued that the record supports the conclusion that the immigration judge informed Defendant of the availability of voluntary departure because the order

1

2  **CONCLUSION**

3  The Court concludes that the July 3, 1999, September 8, 2003, December 20, 2004 and
January 10, 2008 removal orders were not obtained in violation of Defendant's rights to due
process of law under the Fifth Amendment.  These orders may therefore be used as predicate
elements for the Indictment charging Defendant with violating 8 U.S.C. §1326.  Accordingly,

6  **RECOMMENDATION**

7  **IT IS RECOMMENDED** that Defendant's Motion to Dismiss Based on Prior Unlawful
Deportation (#23) be **denied**.

9  **NOTICE**

10  Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be
in writing and filed with the Clerk of the Court within ten (10) days.  The Supreme Court has held
that the courts of appeal may determine that an appeal has been waived due to the failure to file
objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has
also held that (1) failure to file objections within the specified time and (2) failure to properly
address and brief the objectionable issues waives the right to appeal the District Court's order
and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153,
1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

18  DATED this 27th day of January, 2010.

19

20  _George Foley Jr._
GEORGE FOLEY, JR.
United States Magistrate Judge

---

denied his application for voluntary departure.  *See Motion (#23), Exhibit "D"*.  There is no
evidence, however, that Defendant actually had an opportunity to develop a record in support of an
application for voluntary departure.  Therefore, the Court does not reject Defendant's challenge to
the December 20, 2004 removal order on this basis.

16